**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

SOSSI KETCHEDJIAN and JIRAIR KETCHEDJIAN,

Case No.:

Plaintiffs,

v.

BANK OF AMERICA, N.A., TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES, LLC,

Defendants,

/

**COMPLAINT FOR DAMAGES**
**JURY DEMAND**

1. Plaintiffs, SOSSI KETCHEDJIAN ("Mrs. Ketchedjian,") and JIRAIR KETCHEDJIAN ("Mr. Ketchedjian") collectively ("Plaintiffs"), by and through the undersigned counsel hereby bring this action against Defendant BANK OF AMERICA, N.A, ("BANA" or "Bank of America) for violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et. seq.* ("EFTA")

2. Mrs. Ketchedjian also brings this action in her individual capacity against BANA for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA").

3. Additionally, Mrs. Ketchedjian brings this action as the sole "Plaintiff" against Defendants TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the FCRA and as grounds thereof would allege as follows:

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

6. Plaintiffs are each a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

7. BANA is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

8. Mrs. Ketchedjian is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant, BANA is a foreign corporation with its principal place of business at 100 North Tyron Street, Charlotte, NC 28255 with minimum contacts within the State of Florida by way of offering consumer credit cards to its customers, including Plaintiff. BANA maintains a registered agent in Florida with Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

10. BANA uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies ("CRAs").

11. These instrumentalities of interstate commerce are largely electronic or telephonic communications which have effects on consumers account balances and their credit files within the State of Florida.

12. Defendant, Trans, Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13. Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14. Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15. Trans Union, Experian, and Equifax shall collectively be referred to as the "Credit Reporting Agencies" or the "CRAs."

**STATUTORY FRAMEWORK**

**The EFTA**

16. The purpose of the Electronic Fund Transfers Act is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *See* 15 U.S.C. § 1693(b)(1988). Its primary objective "is the provision

of individual consumer rights." *Id. See Curde v. Tri-City Bank Trust Co.*, 826 S.W.2d 911 (Tenn. 1992).

17. The EFTA is aimed at reducing "potential fraud by mandating measures that could alleviate problems associated with conducting fund transfers without any human interaction." *See Foreman v. Bank of Am.*, 401 F. Supp. 3d 914, 923 (N.D. Cal. 2019).

18. The "lack of a written record" and the "absence of any human contact" in electronic fund transfers were factors that "motivated Congress to pass the EFTA.") *See Id.* (citing *Kashanchi v. Texas Commerce Med. Bank*, 703 F.2d 936, 940–41 (5th Cir. 1983).

19. Congress passed the EFTA because of its concern that electronic transactions were "much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods." *See Id.* (citing H.R. Rep. No. 95–1315, at 2 (1978).

20. "The legislation was designed to create rights for the consumer and help bring certainty to an era of banking which was fast becoming faceless, an era wherein banking could be conducted almost exclusively through machines.") *See Id.* (quoting *Spain v. Union Tr.*, 674 F. Supp. 1496, 1500 (D. Conn. 1987) (citing S. Rep. No. 95-915, at 3 (1978)).

21. "EFTA requires a bank to investigate such disputed transactions, to notify the customer if it has verified the transactions as authorized, and to recredit the account if the withdrawals were unauthorized; failure to do so renders the bank liable to the customer for up to treble damages." *See Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1204 (11th Cir. 2012).

22. The EFTA requires that "[f]or each electronic fund transfer initiated by a consumer from an electronic terminal, the financial institution holding such consumer's account shall, directly or indirectly, at the time the transfer is initiated, make available to the

consumer written documentation of such transfer." *See* 15 U.S.C. § 1693d(a). The EFTA also requires that "[i]f a financial institution, within sixty days after having transmitted to a consumer documentation . . . receives oral or written notice in which the consumer" provides adequate notice of an error "the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." *See* 15 U.S.C. § 1693f(a).

23. "Under the EFTA, 'electronic fund transfer' essentially means any transfer of funds initiated through a computer terminal or telephone, where a financial institution is authorized to debit or credit an account. *See* 15 U.S.C. § 1693a(7). This includes point-of-sale transfers (i.e., debit card transactions), ATM transactions, direct deposits, and telephonic transfers. Id." *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 n.1 (8th Cir. 2013).

24. An action pursuant to the EFTA must be commenced "within one year from the date of the occurrence of the violation." *See* 15 U.S.C § 1693m(g). With respect to a failure to investigate claim, "'[i]n light of the ten-day statutory period within which a financial institution must provide a response,' the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *See Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-3586 (MLC), 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011) (citing *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 145 (D. Mass. 2005)).

**<u>The FCRA</u>**

25. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

26. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

27. Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

28. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

29. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA.

30. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the

consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

31. The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections. *See* 15 U.S.C. § 1681m(f).

32. A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1).

33. In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

34. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *See Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

35. Furthermore, the FCRA requires a nationwide CRA that receives a consumer's dispute alleging identity theft, including a request to block, to notify the other CRAs of the complaint, and to maintain procedures for such referral. *See* 15 U.S.C. §1681s(f).

36. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." *See* Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

37. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

38. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the identity theft disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

39. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3), (4).

40. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed

information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

41. In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

42. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

43. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

44. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

45. If the Violation is willful under § 1681n(a) the violator is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; such amount of punitive

damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## FACTUAL ALLEGATIONS COMMON TO PLAINTIFFS' EFTA AND BREACH OF CONTRACT CLAIMS

46. At all times relevant to this Complaint, Plaintiffs had a joint savings account with BANA ending in x3787 ("Savings Account.")

47. The Savings Account was primarily for personal, family, or household purposes. It was not a business or commercial account.

48. Plaintiffs are victims of identity theft, which has led to existing bank and credit accounts being accessed by fraudsters.

49. Sometime around December 1, 2022, Plaintiffs' Savings Account was accessed by an unauthorized person who initiated multiple transfers without Plaintiffs' consent. Some of the transfers were successfully reversed and the funds were returned to the Plaintiffs.

50. However the remaining fraudulent transactions totaling approximately $2,085.46, BANA has failed to return to Plaintiffs after being put on notice that the transactions were unauthorized.

51. When Plaintiffs discovered the suspicious activity, they went in person to the BANA branch that was closest to their current address; Plaintiffs did so within the required 60-day notice period under the EFTA.

52. Based on information and belief, Plaintiffs informed the BANA branch representative that they were disputing the transactions as fraudulent because they were the victims of identity theft.

53. Despite Plaintiffs disputing the charges as unauthorized, BANA has refused to return the $2,085.46 in violation of the EFTA.

54. BANA's claim denials and attempts to hold either one or both of the Plaintiffs liable, directly violates the EFTA which protects consumers from liability for unauthorized transfers.

55. BANA violated the EFTA by denying claims of unauthorized transactions without notifying Plaintiffs of their right to request the documents reviewed during the investigation.

56. Plaintiffs never authorized the fraudsters to withdraw or transfer money from the Savings Account in any form contemplated by the EFTA.

57. Nevertheless, BANA denied all the fraud claims, contending that the fraudulent transfers were authorized.

58. BANA never informed Plaintiffs of their right to request documents used in the investigation.

59. Pursuant to the EFTA, liability for unauthorized use is sharply limited.

60. Specifically, 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> a. $50; or
>
> b. the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized

> electronic fund transfer involving the consumer's account has been or may be effected.

61. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

62. Moreover, BANA's relationship with Plaintiffs is subject to a Deposit Account Agreement ("Deposit Agreement"). With respect to BANA, The Deposit Agreement provides, among other things:

> If you tell us within two business days after you learn of the loss or theft of your card or code, you can lose no more than $50 if someone uses your card without your permission.
>
> If you DO NOT tell us within two business days after you learn of the loss or theft of your card or code, and we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500.
>
> Also, if your account statement shows transfers that you did not make, including those made by your card, code, or other means, tell us at once. If you do not notify us within 60 days after the statement was mailed, you may not get back any money you lost after the 60 if we can prove we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or hospital stay) kept you from telling us, we will extend the time periods.

63. BANA's policies and procedures of: failing to reasonably investigate unauthorized transfers resulting from fraudulent access to a consumer's account; failing to notify the consumers of their rights to request reproductions of all documents which the financial institution relied on to conclude that such error did not occur; and holding consumers responsible for more than the $50 maximum are violations the EFTA.

64. Moreover, Plaintiffs have experienced emotional distress in the form of anger, anxiety, and frustration over not having their funds returned to them despite notifying BANA of the fraudulent transfers.

**FACTUAL ALLEGATIONS COMMON TO MRS. KETCHEDJIAN'S FCRA CLAIMS**

65. Mrs. Ketchedjian is the victim of identity theft, which has led to certain fraudulent applications for credit being submitted in her name; in some cases, those applications have been granted.

66. Initially, Mrs. Ketchedjian became aware that her identity has been used to open other accounts when she received a letter from Radius Global Solutions, LLC ("Radius") on behalf of TD Bank, N.A. in an attempt to collect $12,411.66 for an account opened in her name.

67. Shortly after Mrs. Ketchedjian received the letter from Radius, she reviewed her available credit reports and discovered a fraudulent the BANA credit card account being reported to all the CRAs with a charge off status and charge off amount of $12,790.

68. On or about April 20, 2023, Mrs. Ketchedjian sent a dispute letter identifying herself as a victim of identity theft with accompanying documentation to the CRAs and courtesy copied Bank of America ("First Dispute.") A redacted copy of the First Dispute is attached hereto as Composite Exhibit "A."

69. The supporting documentation in the First Dispute included an Identity Theft Affidavit and Mrs. Ketchedjian's driver's license. *See* Exhibit "A."

70. On April 28, 2023, Trans Union denied Mrs. Ketchedjian's request to block the fraudulent information related to the BANA account.

71. On April 28, 2023, Experian informed Mrs. Ketchedjian that her investigation results related to BANA account were still pending.

72. On May 6, 2023, Equifax denied Mrs. Ketchedjian's request to block the fraudulent information related to the BANA account. In the same communication Equifax claimed Plaintiff did not identify herself and asked for additional documentation when such information that was being requested was already provided in the First Dispute. The Police Report shows that Mrs. Ketchedjian provided two forms of identification to the responding officer: her social security card and driver's license with the corresponding numbers for each form of identification. *See* Exhibit "A."

73. In response to the First Dispute, BANA verified the fraudulent account to all three CRAs who then provided their reinvestigation results to Mrs. Ketchedjian.

74. The CRAs continued to report the BANA account despite receiving disputes with supporting information that the account was the result of identity theft.

75. On August 3, 2023, Mrs. Ketchedjian disputed the BANA account again by sending second set of dispute letters to the CRAs with a copy of each letter sent to BANA as well("Second Dispute".) A redacted copy of the Second Dispute is attached hereto as Composite Exhibit "B."

76. In the Second Dispute, Mrs. Ketchedjian referenced each CRAs refusal to block the disputed information because of her previous credit history and her habit of paying her recurring obligations on time. *See* Exhibit "B."

77. Mrs. Ketchedjian had also recently applied for credit and was only approved for a $500 limit through Chase with an interest rate of over 20% APR.

78. Unless and until the BANA account is blocked or deleted from Mrs. Ketchedjian's credit files with the CRAs, the fraudulent information regarding the account will continue to be viewed by third parties when she applies for credit. As a result, Mrs. Ketchedjian will continue to receive lower credit limits and higher interest rates when she is approved, or she will be denied credit.

**COUNT I - VIOLATIONS OF 15 U.S.C. 1693f(e)**
**AGAINST BANK OF AMERICA**

79. Plaintiffs incorporate by reference the allegations in paragraphs 1, 4 – 7, 9, 16 - 24, 47– 64 as if fully stated herein.

80. The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

81. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

82. Plaintiffs' personal visit to a BANA branch within 60-days of the unauthorized transfers wherein Plaintiffs explained that neither of them authorized the transfers constituted notification to BANA of an error under § 1693f.

83. As a result of a notification complying with § 1693f, BANA was obligated to investigate the error and determine whether an error has occurred.

84. After the investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id*.

85. If a financial institution provides a provisional credit in the first 10 days for the

amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id*. § 1693f(c).

86. Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

87. Because Plaintiffs did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

88. These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiff did not "furnish" the fraudster with access to any of his devices; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

89. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiffs are entitled to an award of statutory and actual damages as well as attorney's fees and costs.

90. Because Defendant did not provisionally recredit Plaintiffs' account within the 10-day period specified in §1693f(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiff to treble damages.

91. Additionally, because Defendant did not have a reasonable basis for believing that Plaintiffs' account was not in error, Defendant's conduct violates§ 1693f(e), entitling Plaintiffs to treble damages.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

**COUNT II – VIOLATION OF 15 U.S.C. §1693f(d)**
**AGAINST BANK OF AMERICA**

92. Plaintiffs incorporate by reference the allegations in paragraphs 1, 4 – 7, 9, 16 – 24, and 47 – 64 as if fully stated herein.

93. Plaintiffs' personal visit to a BANA branch within 60-days of the unauthorized transfers wherein Plaintiffs explained that neither of them authorized the transfers constituted notification to BANA of an error under § 1693f.

94. Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

95. Because Plaintiffs did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

96. As a result of a notification complying with § 1693f, BANA was obligated to investigate the error and determine whether an error has occurred.

97. When BANA determined that an error did not occur, it was obligated to deliver or mail Plaintiffs an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of Plaintiffs promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

98. As reflected in the drafting of §1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and the documents relied upon in making determinations.

99. A consumer's right to the notice in question—*i.e.* notice of the right to examine the documents relied upon by the bank in making the adverse determination—is a procedural right which protects Plaintiffs' concrete interests. Violation of that right presents a "risk of real harm" to that concrete interest.

100. BANA's failure to provide Plaintiffs with the full basis for BANA's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

101. Failure to comply with §1693f(d)'s requirement of the documents used in the investigation entitles Plaintiffs to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

**COUNT III – VIOLATIONS OF 15 U.S.C. §1693g**
**AGAINST BANK OF AMERICA**

102. Plaintiffs incorporate by reference the allegations in paragraphs 1, 4 - 7, 9, 16 –

24, and 47 - 64 as if fully stated herein.

103. The EFTA places sharp limitations on consumer liability for unauthorized transactions. § 1693g.

104. By holding Plaintiffs responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), BANA has violated the EFTA.

105. Failure to comply with the limits set forth by §1693g(a) entitles Plaintiffs to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);
b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);
c. Treble damages pursuant to 15 U.S.C. § 1693f(e);
d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,
e. All other relief the Court deems just and proper.

**COUNT IV – BREACH OF CONTRACT**
**AGAINST BANK OF AMERICA**

106. Plaintiffs incorporate by reference paragraphs 1, 4 - 7, 9, 16 - 24, and 47 - 64 as if fully stated herein.

107. Plaintiffs Deposit Agreement with BANA provides, among other things, that "If you tell us within two business days after you learn of the loss or theft of your card or code, you can lose no more than $50 if someone uses your card without your permission. If you DO NOT tell us within two business days after you learn of the loss or theft of your card or code, and we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500."

108. By failing to limit Plaintiffs' losses to the amounts in the Deposit Agreement, BANA has materially breached the Deposit Agreement.

109. As a direct and proximate result of Defendant's breach, Plaintiffs lost more funds than they should have as a result of unauthorized transfers, and they are entitled to an award of actual damages.

**COUNT V- VIOLATIONS OF 15 U.S.C. §1681s-2(b)**
**AGAINST BANK OF AMERICA AS TO MRS. KETCHEDJIAN ONLY**

110. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully stated herein.

111. BANA is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

112. BANA violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's First and Second Disputes to Trans Union when it failed to review all relevant information regarding the alleged debt.

113. BANA violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's First and Second Disputes to Experian when it failed to review all relevant information regarding the alleged debt.

114. BANA violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's First and Second Disputes to Equifax when it failed to review all relevant information regarding the alleged debt.

115. Additionally, BANA violated §1681s-2(b) by failing to accurately respond to Plaintiff's disputes forwarded by the CRAs concerning the account BANA reported.

116. As a result of BANA's violations of the FCRA, Plaintiff has suffered damages including but not limited to receiving unfavorable credit terms, mental pain and anguish, emotional distress, credit defamation, harm to reputation, time spent dealing with credit report disputes, and the costs associated with his disputes.

117. BANA's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

118. In the alternative, BANA negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

119. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against BANA:

a. Adjudging that BANA has violated 15 U.S.C. §1681s-2(b);

b. Awarding Plaintiff actual damages;

c. statutory damages;

d. attorneys' fees, litigation expenses and costs;

e. and such other relief as the Court deems just and proper.

a. attorneys' fees, litigation expenses and costs of the instant suit; and

b. such other or further relief as the Court deems proper.

**COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2**
**AGAINST TRANS UNION AS TO MRS. KETCHEDJIAN ONLY**

120. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

121. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

122. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

123. During the relevant timeframe, Trans Union received Plaintiff's First and Second Disputes which requested a block of the BANA account.

124. Plaintiff disputed the BANA account on her Trans Union credit report, identified herself, advised Trans Union of the fraudulent BANA account, furnished Trans Union with a copy of the Police Report, and requested that Trans Union block the fraudulent information.

125. In response to her dispute, Trans Union continued to report the tradeline.

126. Rather than block the fraudulent information or request specific additional information from Plaintiff, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

127. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

128. Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

129. As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs;

d. Interest as permitted by law; and

e. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT VII – VIOLATIONS OF 15 U.S.C. §1681i**
**AGAINST TRANS UNION AS TO MRS. KETCHEDJIAN ONLY**

130. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

131. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

132. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

133. During the relevant time frame, Trans Union received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the BANA account appearing on Plaintiff's consumer disclosure.

134. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

135. Trans Union unreasonably relied on information provided by BANA, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Trans Union on notice that BANA's information was inaccurate and unreliable.

136. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

137. Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

138. As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT VIII – VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST TRANS UNION AS TO MRS. KETCHEDJIAN ONLY**

139. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

140. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

141. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

142. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

143. Any users of credit reports that viewed the BANA account saw the $12,790 in fraudulent charges after Plaintiff's First and Second Disputes.

144. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

145. In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

146. As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT IX – VIOLATIONS OF 15 U.S.C. §1681c-2**
**AGAINST EXPERIAN AS TO MRS. KETCHEDJIAN ONLY**

147. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

148. At all times relevant hereto, Experian was and is a "consumer reporting agency" as defined by the FCRA.

149. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

150. During the relevant time period, Experian received Plaintiff's First and Second Disputes which requested a block of the BANA account.

151. Plaintiff disputed the BANA account on her Experian credit report, identified herself, advised Experian of the fraudulent BANA account, furnished Experian with a copy of the Police Report, and requested that Experian block the fraudulent information.

152. Instead of blocking the information, Experian placed an extended fraud alert after it refused to block the BANA account.

153. Rather than block the fraudulent information or request specific additional information from Plaintiff, Experian negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

154. Alternatively, Experian failed to block the BANA account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

155. Experian's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

156. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

157. As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to

purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT X – VIOLATIONS OF 15 U.S.C. §1681i**
**AGAINST EXPERIAN AS TO MRS. KETCHEDJIAN ONLY**

158. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

159. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

160. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

161. During the relevant time frame, Experian received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the BANA account appearing on Plaintiff's consumer disclosure.

162. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

163. Experian unreasonably relied on information provided by BANA, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Experian on notice that BANA's information was inaccurate and unreliable.

164. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

165. Alternatively, Experian negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

166. As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT XI – VIOLATION OF 15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN AS TO MRS. KETCHEDJIAN ONLY**

167. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

168. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

169. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

170. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

171. Any users of credit reports that viewed the BANA account saw the $12,790 in fraudulent charges after Plaintiff's First and Second Disputes.

172. As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT XII – VIOLATION OF 15 U.S.C. 1681c-2**
**AGAINST EQUIFAX AS TO MRS. KETCHEDJIAN ONLY**

173. Plaintiff incorporates by reference the allegations in paragraphs 2, 3, 5 – 7, 13, 15 – 36, and 42 – 60 as if fully set forth herein.

174. At all times relevant hereto, Equifax was and is a was and is a "consumer reporting agency" as defined by the FCRA.

175. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

176. During the relevant time frame Equifax received Plaintiff's First and Second Disputes which requested a block of the BANA account.

177. Plaintiff disputed the Bank of America account on her Equifax credit report, identified herself, advised Equifax of the fraudulent related to the BANA account, furnished Equifax with a copy of the Police Report, and requested that Equifax block the fraudulent information.

178. Instead of blocking the information, Equifax placed an extended fraud alert on Plaintiff's Equifax credit file.

179. Rather than block the fraudulent information or request specific additional information from Plaintiff, Equifax negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

180. Alternatively, Equifax failed to block the BANA account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

181. Equifax's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

182. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

183. As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT XIII – VIOLATION OF 15 U.S.C. §1681i AGAINST EQUIFAX AS TO MRS. KETCHEDJIAN ONLY**

184. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

185. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

186. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

187. During the relevant time frame, Equifax received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the BANA account appearing on Plaintiff's consumer disclosure.

188. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

189. Equifax unreasonably relied on information provided by BANA, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Equifax on notice that BANA's information was inaccurate and unreliable.

190. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

191. Alternatively, Equifax negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

192. As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

a. Actual damages in an amount to be determined by the jury;
b. Punitive damages in an amount to be determined by the jury;
c. Statutory damages as determined by the Court;
d. Attorneys' fees, litigation expenses and costs;
e. Interest as permitted by law; and
f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT XIV – VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST EQUIFAX AS TO MRS. KETCHEDJIAN ONLY**

193. Plaintiff incorporates by reference the allegations in paragraphs 2 – 5, 8 – 15, 25 – 45, and 65 – 78 as if fully set forth herein.

194. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

195. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

196. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

197. Any users of credit reports that viewed the BANA account saw the $12,790 in fraudulent charges after Plaintiff's First and Second Disputes.

198. As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

a. Actual damages in an amount to be determined by the jury;
b. Punitive damages in an amount to be determined by the jury;
c. Statutory damages as determined by the Court;
d. Attorneys' fees, litigation expenses and costs;
e. Interest as permitted by law; and
f. Such other and further relief including as the Court deems equitable and just under the circumstances.

**JURY DEMAND**

199. Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 30, 2023

*Respectfully submitted*,

**SHARMIN & SHARMIN, P.A.**

***/s/ Kevin Rajabalee***
Kevin Rajabalee, Esq.
Fla. Bar. No. 119948
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
Primary email: kevin@sharminlaw.com
Email: eiman@sharminlaw.com

*Attorneys for Plaintiffs*